IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

Vs.                                                       No. 09-40069-01-SAC

BOISY D. BAREFIELD, II,

    Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's first motion to suppress all items seized from him and the vehicle he was driving on July 29, 2009, (Dk. 17), and his second motion to suppress all items seized from the same vehicle that was unoccupied and parked at a private residence on July 20, 2009, and his subsequent statement (Dk. 33). The government has filed responses to each motion. (Dks. 26 and 35). On December 22, 2009, the court heard evidence and entertained argument. After considering the evidence and arguments and researching the issues, the court files this order as its ruling on these motions.

**INDICTMENT**

The defendant is charged with two counts of being a felon in possession of a firearm on July 20, 2009, and on July 29, 2009, and with

two counts of possession of marijuana also on July 20, 2009, and on July 29, 2009.

**FIRST MOTION TO SUPPRESS**

On July 29, 2009, while stopped at the traffic light at the intersection of 21st and Gage streets, Topeka Police Officer Alexander Wall observed a Ford Explorer violate the yellow light ordinance. The driver of the Explorer started through the intersection when the traffic light was already yellow and the light turned red before the Explorer cleared the intersection. The light for opposing traffic became green while the Explorer was still in the intersection. Deciding to cite the driver for this traffic infraction, Officer Wall began his pursuit and activated his emergency lights but the Explorer did not pull over. He then used his emergency siren for two seconds but the vehicle still did not stop. He repeated the siren and left it on until the Explorer pulled over approximately six to seven blocks after Officer Wall had first activated his emergency lights.

Field Training Officer Jacob Nelson was riding with Officer Wall during the traffic stop. Both officers approached the stopped Explorer and saw the driver and passenger frantically doing something with their hands. When closer, they saw the driver and passenger were quickly lighting

cigarettes in what the officers took to be suspicious behavior. By training and experience, the officers knew that cigarette smoke was used to mask other odors. Officer Wall approached the driver's side and asked to see a driver's license. The driver identified himself as the defendant and told the officer that his license was suspended. When the driver began blowing cigarette smoke in the officer's face, Wall believed the driver was intentionally trying to mask the odor of something. Wall also bserved that the driver's eyes were bloodshot and glassy. He returned to his patrol car to run a computer check on the provided information and registration.

Standing at the passenger side of the Explorer, Officer Nelson noticed that the driver and passenger were blowing smoke in the direction of Officer Wall. As he walked closer to the open passenger-side window, Officer Nelson immediately detected the odor of burnt marijuana. Based on his training and experience, he had no doubt about his identification of the odor. After their initial contact, Officer Nelson discussed his observations with Officer Wall who had not smelled marijuana.

From the registration check, Officer Wall recognized the address of the vehicle's owner as the location of a recent drive-by shooting. Officer Ronnie Connell arrived on the scene as backup and approached

3

with Officer Wall the second time. Officer Connell did not detect the smell of burnt marijuana from his location next to Officer Wall, but he did experience the defendant blowing cigarette smoke as a masking agent. Based on the defendant's physical appearance, the driving infraction, the possibility of the vehicle leaving one of the bars in the immediate vicinity of the traffic infraction, the delayed response to the officer's emergency lights, the suspicious smoking of cigarettes, and Officer Nelson's detection of a burnt marijuana odor, Officer Wall decide to run the defendant through the standard field sobriety test.

But first, Officer Wall patted down the defendant for officer safety. He felt something unusual in the defendant's front pocket and inquired about it. The defendant said it was a package of Swisher Sweets. Knowing the felt item was larger and bulged more than a mere package of cigars, Officer Wall was concerned that it could be a weapon, so he removed it out of concern for officer safety. He handed the package to Officer Nelson who immediately saw a marijuana bud tucked within the outside cellophane wrapper of the box.

Officer Wall proceeded with the field sobriety tests and then arrested the defendant handcuffing him and placing him in a patrol car.

4

The passenger, Eunice Jones, was placed in a different patrol car. The officers then searched the Explorer finding marijuana and scales and a loaded handgun under the driver's seat. Officer Wall testified that even without finding the marijuana bud, they would have searched the car based on Officer Nelson's detection of the burnt marijuana odor. Officer Nelson testified that even without smelling the odor or finding the bud, they would have looked for weapons before releasing the Explorer because of its association with the drive-by shootings.

The defendant complains that he was unlawfully seized beyond the proper scope of the traffic stop and the vehicle was illegally searched without a warrant or consent. The defendant concedes the initial stop was legitimate but complains that the detention was unlawful in extending beyond the issuance of the traffic ticket. The government counters that during the lawful scope of the traffic stop officers acquired probable cause for searching the vehicle.

"The Supreme Court has said there are three types of police-citizen encounters." *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007). The first type is a consensual encounter that does not trigger protection under the Fourth Amendment, the second is an

investigative detention that constitutes a "Fourth Amendment seizure[ ] of limited scope and duration and must be supported by a reasonable suspicion of criminal activity," and the third type is an arrest that is "the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *Id.* (quotation and citation omitted).

Traffic stops are seizures subject to Fourth Amendment analysis. *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). Most analogous to investigative detentions, traffic stops are scrutinized for lawfulness under the two-prong analysis set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* The first prong addresses "whether the officer's action was justified at its inception." 392 U.S. at 20. The second prong is whether the detention "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

The defendant does not challenge the first prong of this analysis. The second prong of an investigative detention is generally met when "it 'last[s] no longer than is necessary to effectuate the purpose of the stop.'" *Amundsen v. Jones*, 533 F.3d 1192, 1199 (10th Cir. 2008) (quoting *United States v. Millan-Diaz*, 975 F.2d 720, 721 (10th Cir.1992) (internal quotation marks omitted) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103

6

S.Ct. 1319, 75 L.Ed.2d 229 (1983)). This means "[t]he scope of the detention must be carefully tailored to its underlying justification." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319. As part of a routine traffic stop, the officer:

> may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation. Once those tasks are completed, a driver must be allowed to proceed on his way unless reasonable suspicion exists that the driver is engaged in criminal activity or the driver consents to additional questioning.

*United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005) (citation omitted). "[O]nce the purpose of the stop is satisfied and the underlying reasonable suspicion dispelled, the driver's detention generally must end without undue delay." *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir.2006). "An investigative detention may be expanded beyond its original purpose, however, if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity. *United States v. Villa-Chaparro*, 115 F.3d 797, 801-802 (10th Cir.) (internal quotation marks and citations omitted), *cert. denied*, 522 U.S. 926 (1997). For example, if the stopping officer gains reasonable suspicion that the driver is under the influence, then the use of field sobriety tests does not exceed the scope of the stop. *Amundsen v. Jones*, 533 F.3d at 1199-1200.

The odor of burnt marijuana coming from the passenger compartment of a vehicle provides an officer with probable cause to search the passenger compartment. *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005); *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000). Officer Nelson's detection of the odor of burnt marijuana is logically consistent with other circumstances of the stop. The defendant's delayed response to the emergency lights would be an opportunity for him and his passenger time to hide any controlled substances being used. When the officers approached the stopped car, they saw the driver and passenger moving frantically within their seats as if looking for something or hiding something. As the officers neared the car, both the driver and the passenger suddenly began smoking cigarettes and then blew smoke into the officer's face in an apparent effort to mask other odors. Officer Wall observed the driver's blood-shot and glassy eyes but did not detect the odor of alcohol. The smell of burnt marijuana along with these additional circumstances provided officers with probable cause to search the vehicle for illegal drugs regardless of whether other grounds also exist on the other circumstances evolving later in the stop. The defendant's motion should be denied.

**SECOND MOTION TO SUPPRESS**

On July 20, 2009, Topeka Police Department Officer Jeremy Warren was called to the residence at 2406 Pennsylvania, Topeka, Kansas, on a complaint that loud music was coming from a vehicle parked in the driveway. Officers were familiar with this residence, as this had been the location of drive-by shootings and they had received information that a homicide suspect who was a friend of the defendant could be staying there. Consequently, Officer Warren approached in his patrol car from the alley. While he was four houses away, he could hear the stereo music coming from the parked vehicle at 2406 Pennsylvania. Officer Warren testified that he was over 100' away when he heard the stereo music and that this level of sound violates the municipal ordinance.

Officer Warren approached the maroon Ford Explorer that was parked in the driveway immediately next to the residence. He observed that it was unoccupied, its doors were shut, and its engine was running. He looked through its window and saw a pistol stuck between the driver's seat and the console. He also saw a plastic bag containing a green leafy substance on the console next to the dash. Both items were in plain view and readily seen from outside the vehicle. He testified that the green leafy

9

substance matched the appearance of marijuana.  Photographs later taken from outside the Explorer confirm that both the gun and the plastic bag of green leafy substance were in plain view.

      Officers then telephoned the residence and asked for everyone to exit the house so that the scene could be secured in case the homicide suspect was present.  Detective Wheeles spoke with Emily Emmot, the defendant's girlfriend and mother of his two children who lived there.  Ms. Emmot also was the title owner of the Ford Explorer.  She denied knowledge of any gun or marijuana seen in the vehicle.  While having probable cause to search the vehicle under the plain view doctrine, Detective Wheeles decided to pursue the additional warrant exception for a consensual search.  He talked with Ms. Emmot explaining that she could give written consent to an immediate search of the vehicle or that he would have the vehicle towed while a search warrant was obtained for the vehicle and the house.  Under the latter option, officers would not allow anyone back into home until after any warrant was executed.  Detective Wheeles did not regard Ms. Emmot's children who were inside the house to be in danger, and he never threatened to take Ms. Emmot's children from her.  Ms. Emmot signed the consent form, and the Explorer was searched.  The

officers seized the weapon which was loaded and the clear plastic bag of green leafy substance which was confirmed by testing to be marijuana. Officers also found digital scales.

At the scene, the defendant told officers that he did not want any trouble for Ms. Emmot and that the gun and marijuana were his. Later at the police station, Detective Wheeles administered the *Miranda* warning, received the defendant's consent for questioning, and asked the defendant about the gun and the marijuana. The defendant admitted that he kept the gun for personal protection and that he had the marijuana for personal use.

The defendant first contends that officers coerced Ms. Emmot's consent to search the parked vehicle by the threat of either impounding the car or forcing her and her children to remain outside their home until a warrant was issued. The court sees no reason to reach this issue, as the officers were justified in searching the parked vehicle after being in a lawful position to see through the vehicle's windows a plastic bag containing a green leafy substance matching the appearance of marijuana on the vehicle's console next to its dash. The plain view doctrine allows the officer's lawful seizure of evidence without a warrant if:

> "(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was

> immediately apparent-i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself."

*United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002) (quoting *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999)). "More specifically, if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle." *Id.* (citations omitted). Officers lawfully entered upon the private property to check on a complaint of loud music coming from this parked vehicle. From a lawful position outside of the car, officers could see the plastic bag and immediately recognize the apparent incriminating character of its contents. The officers had probable cause to search the vehicle that was the subject of their initial investigation into a criminal complaint.

The defendant also argues that his admission was involuntarily coerced by the officers stating their intention to arrest, book and charge the mother of the defendant's children. There is no evidence that officers ever made such a statement in the presence of the defendant. The court finds nothing to suggest that officers made any threat to Ms. Emmot or to the

defendant about taking the children from Ms. Emmot. Based on the evidence admitted at the suppression hearing, the court finds that the government has carried its burden of proving by a preponderance of the evidence that the defendant's admissions were voluntary. *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006). The court does not find anything to suggest that the defendant's statements were extracted or induced by threats or promises. *United States v. Hernandez*, 93 F.3d 1493, 1503 (10th Cir. 1996) (citations omitted). In the absence of any coercive police conduct, there is no basis for finding the defendant's confession involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause."); *Moran v. Burbine*, 475 U.S. 412, 421 (1986) ("[T]he relinquishment of the [Miranda] right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."). Thus, in the absence of police coercion, a court cannot conclude a defendant's waiver or inculpatory statements are involuntary. *See United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir.1999). The "ultimate inquiry is whether the officers took

unfair advantage of the defendant's traits or surrounding circumstances."
*United States v. Lamy*, 521 F.3d 1257, 1261-62 (10th Cir.2008) (internal quotation marks and citation omitted). The defendant's motion to suppress his confession as involuntary is denied.

IT IS THEREFORE ORDERED that defendant's first motion to suppress all items seized from him and the vehicle he was driving on July 29, 2009, (Dk. 17), and his second motion to suppress all items seized from the same vehicle that was unoccupied and parked at a private residence on July 20, 2009, and his subsequent statement (Dk. 33), are denied.

Dated this 5th day of January, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge